Good morning. We've got a sort of a special method of proceeding here today. We have a three-judge court, and you see two judges here. And we have Judge Hamilton sitting, I don't know, virtually or in reality with us there. But I see it. Judge Hamilton, good morning. Good morning. And you can see him here, and let us know if you have any problem in this procedure. This is my first engagement with it, but I think it'll work. I'm told it's worked before, and we're going to still give it the same consideration that we give every case. First case we're going to hear this morning is Brown v. GNC Corporation, and Mr. Berg, we'll hear from you. Good morning, Your Honors. May it please the Court. I am Robert Berg of the law firm Denley & Carton, representing appellants. This multi-district litigation is a very simple consumer deceptive practices class action lawsuit. You know, any time you start and say something's very simple, you invite a lot of questions. That's true. I understand that. It's brought under the consumer protection statutes of seven states, California, Florida, New York, Ohio, Illinois, New Jersey, and Pennsylvania. The defendants are manufacturers and sellers of glucosamine and chondroitin dietary supplements, including products marketed under the GNC brand and under the Rite Aid brand. The lawsuit involves misrepresentations defendants made about the efficacy of their glucosamine chondroitin products, which they market to persons suffering from osteoarthritis and similar conditions. The actions involve state law only, but they're filed in federal. Did you say they marketed for osteoarthritis? Well, they marketed to persons suffering from osteoarthritis and similar conditions. They're not marketed as a prescription drug for osteoarthritis, but the target market is persons who have ailments, which people… In other words, you can have symptoms caused by diseases, and you can have symptoms caused by just wear and tear. And the question, that's one of the questions, of course, they raise in this case, and it may be a legitimate question. Are your plaintiffs in these cases persons suffering from osteoarthritis? The persons who have joint pain and joint problems. No, I'm asking are the plaintiffs in this case, the individual plaintiffs, are they suffering from osteoarthritis? Have they been clinically diagnosed as suffering? I don't believe all of them have. Do they have that disease? I don't know specifically, Your Honor, because I don't think it really matters, because the representations are directed at the symptoms that people with arthritis have and symptoms that… I mean, vitamin A, they directed good eyes. They say you're going to get better eyes and so forth. Does that mean you can treat glaucoma with vitamin A? I mean, I don't think that follows. I think that may be one of the difficulties here is that we ought to understand what it's being marketed for and to whom. And the district court thought that if it's marketed to the disease, there's an exclusion on the label for the disease. And if it's marketed to people with non-arthritis, then you have the issues that the court addressed in its opinion. Well, these are not prescription medications. I understand. These are over-the-counter. And we don't distinguish in our class definition between persons who have arthritis and persons who suffer from similar issues that people with arthritis have. We say anyone who… I know you don't, but I'm asking you why isn't that important? In other words, if a person has a disease and the label says this is not for disease, then it seems to me that we ought to be looking at persons that don't have the disease and see whether there's a misrepresentation. Well, the disclaimer that you're referencing, which is in tiny print in a footnote on the labels, is mandated by the DSAGA. It doesn't provide immunity from false advertising claims. The FTC is pretty clear on that in its dietary supplement advertising guide, and various courts have also agreed. It tells the scope of what they're trying to represent, and they're saying that this product is not to cure a disease. It's intended to rejuvenate, I guess, overworn joint parts. Well, first of all, as a matter of science, it can't rejuvenate anything. Well, we can address that point. I mean, you're making that point. They claim they have a clinical study, and the district court addressed that. But I'm suggesting to you it may be very important to make the distinction in these cases, to plead, whether we're talking about persons who have osteoarthritis, the disease, and persons who don't have the disease. And the district court addressed this and gave you leave to amend, and I guess you chose not to amend. Is that it? Well, the judge, the district court, imposed a legal framework. Oh, let me just answer the question. My question is, did you choose not to amend? We chose not to amend. That's correct, Your Honor. So we can conclude that your appeal was a rejection of the court's offer to give you to amend it, because, you know, otherwise we wouldn't have a final judgment. Well, it was in the context that we wanted to stand on the complaint that we had. We think it met the legal requirements of Twombly and Iqbal to go forward on a motion to dismiss. Well, why? We didn't want to be pigeonholed in the legal framework, which we don't think applies to this case. Well, why didn't you plead, or can you plead, based on what you know about this case, that these representations are literally false? And isn't it true that you'd have to plead that? We do plead that. We say these representations are false. No, no, no, not just false, but literally false. There's no other scientific evidence out there against your position. Well, we're not aware of any scientific evidence supporting the claims made by the defendants here. Now, they refer to some, on some of their products, they refer to a study that the claim exists. We don't know whether or not it exists. Well, there are two experts out there, as I understand it, that support the other side's position. You're saying that they support pain reduction? Right. Well, the claims include rejuvenating and regenerating cartilage, which scientifically can't happen from ingestion of oral. But you see, your complaint doesn't say these things. Your complaint says the vast majority. It doesn't say all, and they claim they have some support. And so you're alleging a misrepresentation by them, and if they have a legitimate study that supports what they're saying, you can't say as a matter of law that it's a false misrepresentation. It's not a matter of law. Well, we can say that, first, the consumer protection statutes really address the capacity to mislead of an advertisement. So you have to look at them in context, what representations are made, how prominently they're displayed, if there are a disclaimer like we talked about here, if it's in tiny print, does that still have the capacity to mislead? But the court below, and that's what we're addressing, the 12b-6, the court below found that you did not allege that you just alleged a difference of opinions because you said the vast majority of opinions go your way. You did not plead what Judge Floyd just asked you, that there are no opinions the other way. And on that basis, the district court said you haven't alleged a misrepresentation of falsity, and you could have cured that if you could have. Now, you've said today, and that's fair enough, that you're standing on the pleading as filed. But it seems to me that might raise a problem. No, I think, Your Honor, if you look at the laws, the state laws on false advertising, they look at a contextual view of a particular representation, and they determine does that have the capacity to mislead a reasonable consumer. And under that framework. Let me ask a question, please. Yes, Your Honor. It seems to me, following up on what Judge Floyd said, that in order to prevail, you needed to allege that no reasonable expert would agree with the health claim benefits on the products. And you didn't allege that. You did a lot of work in this case. You couldn't find an expert that would say that? No, we could, but we don't have to, and we shouldn't have to. We shouldn't be pigeonholed into a pleading requirement that's not required by Quambly and Iqbal, and that will create other issues down the road in terms of our burden of proof, which is why we went, we pled as we did plead. Well, I'm not sure you didn't have to allege that to prevail in this case. I don't think, Your Honor. I mean, you can always find an expert to say anything. So if real experts who, like the National Institute of Health, has a whole bunch of studies here, they all say glucosamine and chondroitin don't work for anything. They're basically no better than a placebo. And if you have this enormous body of scientific literature and peer-reviewed journals and they have some study, which no one has ever seen because they won't show it to anyone, of 60 subjects in a 30-day trial, how can that possibly insulate them from any claims of false advertising? It's not a question of insulating them. It's a question of did they allege falsely if they have a reasonable opinion supporting their claim. If they have a reasonable opinion, let's assume that, supporting their claims, and they set forth those claims on the label, how can that be a misrepresentation, just because you have experts who disagree? Because it's the trier of facts responsibility of the jury here to determine. But it's a matter of law. You can't say that they are false the way you have alleged it. You were given the opportunity to amend the way that Judge Hamilton pointed out, and you chose not to. Judge, we don't even know if this study exists. I've invited them to show us the study. If you call them, their 800 number, they don't tell you what the study is. We're talking about pleading a cause of action. We just have to allege under Iqbal and Twombly a plausible set of facts. We say the vast multitude of scientists who have studied this extensively have found that these glucosamine and chondroitin has no positive impact on symptoms. And the district court said the vast majority of experts' allegation is nothing more than inviting a battle of the experts. That's correct. Which precludes a statement that they misrepresented because if they misrepresent, if they relied on a minority of experts who were reasonable, then their label is not a misrepresentation. They had good, reasonable support. And then you have the battle of the experts, maybe later as an evidentiary question, but you don't have fraud or misrepresentation. Well, Your Honor, I mean, I think as a matter of law, you can say one unpublished study of 60. See, now you're arguing the weight of the evidence. We're talking about the pleading. And you basically pled that your position is supported by the vast majority. That's correct. Leaving open the possibility that their position is supported by the remaining minority, which means that they stated on their label with the support of the remaining minority. I think, Your Honor, there's junk science and there's good science. I mean, it should be a battle in terms of like the Dow group. Did you allege that they have junk science to support them? All we alleged was that all these studies, we cite, I believe, 12 studies in the complaint, and they rely on dozens and dozens of other studies. There are studies related to osteoarthritis, too. That's right, and we do allege, specifically in the complaint, that experts say that you can extrapolate from the osteoarthritis to the non-arthritis. Well, there you also say it's not. There are some that say that. I mean, I guess you're not addressing the problem that I'm concerned about because you're sort of saying it doesn't exist. But the theoretical problem is that if somebody has a reasonable expert opinion or two reasonable expert opinions that a medicine will do a particular thing, and then they put that on their label to accuse them of misrepresentation in that context, regardless of what the other experts say, it doesn't fly. And that's what the district court found. It didn't resolve the factual dispute whether it's junk science or not. The court said it's a battle of the opinions, and that's not the basis for a misrepresentation claim. And you have to address that either with an amended complaint or some argument pointing out the flaw in that logic. Your Honor, the FTC brings all the time false advertising claims when there's a battle of the expert, saying the reasonable medical or scientific evidence doesn't support the claims made, and the defendants typically have a few experts saying, oh, yeah, it does. So I don't think you can say it's a matter of law. I mean, if we had to replead. So we're supposed to accept the fact that you say the FTC prosecutes claims like this, entitles you to go with this complaint? Well, I think the complaint is sufficient, and then it should be a battle of the experts, and the trier of fact should make the determination whether or not, in the context of the representations made and whatever the scientific evidence is, whether the ad has the capacity to mislead. Now, if we have to amend, we'd be happy to amend. Except you made an election. You had the opportunity. Well, we did, and we believed the complaint was sufficient. If you wanted to amend, then we wouldn't have jurisdiction. Isn't that right, under our domino sugar case? Well, Your Honor, if you affirm and that it's a district court's decision, I would respectfully urge that it would be with leave to amend the law. All right. Mr. Berg, you have some rebuttal, and we'll see you back. Right. Mr. Palmore. Thank you, Your Honor. Joseph Palmore here for GNC and Rite Aid. The district court in this case properly dismissed the complaint because plaintiffs failed to adequately allege that the actual representations on the labels at issue were false. Those labels, as has been discussed, make general claims about joint health, and they do so on behalf of products with a complex set of ingredients. For two independent reasons, the complaint in this case was inadequate. First, the complaint at most alleges that a subset of the ingredients of these products are inadequate to treat osteoarthritis, which is a very specifically diagnosed degenerative disease of the joints, yet the labels make no representation that they can treat that disease, and, in fact, they disclaim it. Second, none of the studies cited address the products as a whole. Instead, they target only some individual ingredients in isolation. So I'd like to take those in turn. With respect to the actual claims on the labels, and there was some discussion of this between plaintiffs' counsel and you, Judge Niemeyer. Well, you could have made it absolutely clear by saying this has not been shown to cure osteoarthritis, and that would put the whole thing to rest, wouldn't it, or not? Well, there's no obligation, I suppose. Well, you have the mandated disease label on there that this is not intended to cure disease, and osteoarthritis is a disease. I guess everybody concedes. Yes. Well, I think it's important to emphasize the statutory framework here, which is the Dietary Supplement Health and Education Act, and it distinguishes, makes a bright line distinguish between disease claims on the one hand and structure and function claims on the other. Disease claims have to be preauthorized by the FDA, even if they appear on supplement labels. But these are structure and function claims. They don't have to be precleared by the FDA, and they have to include just this disclaimer. But we're not relying just on the disclaimer. If you look at the actual representations on the label, they talk about, in very general terms, promoting joint health. The Triflex Sport, which is one of the labels at issue here that plaintiffs challenge, talks about treating joint pain that's caused by the wear and tear of exercise. So if you look at these claims, they couldn't reasonably be interpreted to say that they treat the symptoms or will cure osteoarthritis. And then to the extent that there's any doubt about that, the disclaimer would completely dispel them. And that's critical because every single study in the complaint is an osteoarthritis study. So plaintiffs spend paragraph after paragraph in the complaint alleging the falsity of a claim that is not made in this case. There is no claim that these products are efficacious to treat the symptoms of the degenerative joint disease of osteoarthritis. Is there a cure for osteoarthritis? No, Your Honor. There is no cure. And if a person had osteoarthritis and diagnosed that, would they receive that information from the doctor that there's no cure for it? I'm sure they probably would. I mean, I think if you actually read some of the studies that are cited in the complaint and they're incorporated by reference, they discuss the fact that there's no cure for osteoarthritis. Often what's recommended is weight loss, exercise, some analgesics, things like that. But it's critical to emphasize that the labels here don't make any representation that they can cure osteoarthritis. They're talking about general joint comfort, flexibility, and any number of conditions can lead to joint problems other than osteoarthritis. With respect to non-osteoarthritic consumers, and I think it's important to point out there is a body of district court case law addressing claims very similar to this one, and we cite a number of those at pages 32 through 33 of our brief, including the Eckler case from the Southern District of California, which is a very persuasive explanation of why complaints like this don't state a claim. A number of those cases dismissed on the grounds that all the studies cited in the complaint, both there and here, are osteoarthritis studies, and that you can't just flick a switch and translate the findings of those studies to disprove the representations on the actual labels with respect to generalized joint issues in the general population. The plaintiffs tried to address that problem by dropping one footnote, footnote five, in the complaint, and this was the focus of Judge Motz in the district court. And that complaint, at best, is completely conclusory. Experts in the field would testify, essentially, that these studies are a proxy for the ability of the subset of these ingredients to address joint discomfort in the general population. Who are these experts? We don't know. What's their factual basis for saying this? We don't know. Of course, that's evidentiary matters. Your Honor, I would respectfully suggest that it's actually a pleading matter under Iqbal, Twombly, this Court's decision in Walters. It's basically an unadorned statement. At best, it's an unadorned statement of falsity. It's a legal conclusion masquerading as a factual allegation, and it's simply unelaborated, and it's insufficient. That kind of naked assertion is now insufficient under the pleading standard of Rule 8 as it's been construed by the Supreme Court and this Court. Do they have to plead literal falsity? Yes, I think they did. And did they? No, they didn't, Your Honor. And I think that's what Judge Motz was focusing on. That footnote is artfully phrased. It doesn't say these studies are a proxy and therefore prove that the substances would be inefficacious in consumers without osteoarthritis. I think if it had just said that, it would still have the problem of being unelaborated and unsupported. But at least it would have been an assertion. Instead, what the footnote said is experts. We could hire some experts who would say this. And as plaintiff's counsel himself just said, you can hire an expert to say anything. So they've just said there are experts out in the world who would say this. That's not the same as actually averring and alleging the thing itself that the experts would testify to. Actually, what the plaintiffs have done in their complaint, and this is, I think, what Judge Motz was saying, is that they have done no more than allege a battle of the experts. And that's plainly insufficient under the feeding standards of Rule 8 and Iqbal and Twomley and Walters. There's a second issue, which a number of the district courts that have dismissed complaints like this have focused on, and it's this. The studies, which all address osteoarthritis, as we discussed, also only address a certain subset of the ingredients of these products looked at in isolation or in combination within that subset. None of the studies address these actual products, which have a complex list of ingredients. So the district court in Rosen, which we cite, talked about the logical fallacy of composition, which is the idea that the whole is no more than the sum of the parts, or the idea that qualities and attributes of individual components can be attributed to the whole. And it could illustrate that by saying that if I say that flour and baking powder eaten by themselves tastes bad, that doesn't prove that chocolate cake made with flour and baking powder tastes bad. That would be a logical fallacy. It ignores what happens during the cooking process, and it ignores the additional ingredients that you put into the recipe. So, too, here. These studies, nearly all these studies, focus on glucosamine or chondroitin. But if you look at the labels, there are many other ingredients in most of these products. And the complaint doesn't factually support any allegation with respect to the falsity of claims made with respect to the products as a whole, with respect to all these individual ingredients, and with respect to what they can do in a synergistic way. And it's not too much to ask plaintiffs who are pleading false advertising to prove, or at least to allege at the pleading stage, that the actual representations on the label are false, with respect to the actual products being sold. Can I ask you a question? I noticed that the complaint also does not allege that the plaintiff tried the product and found it didn't work. As a matter of fact, one of the plaintiffs, I think, had bought it repeatedly, suggesting that at least that person thought maybe it was helping some, I don't know. But is that a necessary allegation to prove falsity, that the person who purchased it was able to conclude that the representation was false? I don't know that that's an allegation that would be strictly required in a false advertising case. I think it is telling, though, that if you look at these labels, both the GNC labels and the Rite Aid label, all of them say 100 percent money back guaranteed. So to the extent that these plaintiffs weren't satisfied, they didn't need to file a class action complaint. Then wouldn't they have to allege they weren't satisfied? In other words, my point is it would be strange in a misrepresentation case for somebody to buy something and then hear on television that it doesn't work and then say I'm now dissatisfied. That's a hypothetical. That's not the case. The question is, would that state a cause of action for misrepresentation? I think it would raise questions about the standing of the plaintiffs. I think that what they've alleged is a pocketbook injury and that they were injured at the point of sale. I understand they're injured, but they have to be injured by something false, something that caused dissatisfaction on a reasonable basis. And the question is, how can they, if they don't allege they were dissatisfied or it didn't work, how can they allege that the purchase was improvidently made? No, I think that's right, Judge Niemeyer. I think that does undermine their allegation of falsity. But even apart from that, the allegation is inadequate for all the reasons we've stated. There's another problem with the pleading here, too. One is, as came out in the colloquy with counsel, none of the patients, to the extent that he's complaining about the ability of these substances to treat osteoarthritis, they haven't pled that any of these plaintiffs have osteoarthritis. Let's go back to your chocolate cake a minute. Yeah. Is it true that you marketed these products as glucosamine and chondroitin, particularly the Rite Aid products? No one sells chocolate cake under the label baking soda and flour. So isn't there a flaw in your analogy there? Your Honor, I think there is one. Because you actually marketed as chondroitin and glucosamine. I think with respect to one of the Rite Aid products, you're right, Your Honor. But with respect to, and plaintiffs don't call that one out as something that should be analyzed any differently than any of the other labels. But with respect to the other labels, if you look at the Triflex sports blend, for instance, it lists a whole number of products, including a joint cushioning sports blend, which if you look over on the right side of the panel, lists a whole bunch of ingredients. There's MSM. There's hyaluronic acid. There are different components and different ingredients in each of these, which I think actually goes to the point that these are different products with different compositions of ingredients. And to just pull out one or two and say those are ineffective when used in isolation is insufficient. But going back to the larger point, the real fundamental flaw here is that paragraph after paragraph of the complaint alleges falsity with respect to a claim that's simply not made here, which is that these dietary supplements can treat the symptoms or can cure osteoarthritis. That's not a claim that's made on these labels. It's, in fact, expressly disclaimed. And plaintiff's attempt to bridge or leverage all of that material into the non-osteoarthritic population with respect to the actual claims that are made here is entirely conclusory and does no more than allege a battle of the ethics. If the court has no further questions, we'll rest on our briefs. Anything, Judge Hamilton? No, no further questions. All right, Mr. Berg? Your Honors, I'd like to address a few of the points that were just raised. With respect to the ingredients, glucosamine and chondroitin are the largest percentage ingredients by a huge margin in these products. Glucosamine is typically 1,500 milligrams and chondroitin is typically 1,200 milligrams. These other trace elements, I call them fairy dust. They include things like in some of the products willow bark and all sorts of little things like that. We do in the complaint address several of the major additional ingredients that are included on some of the products, MSM and hyaluronic acid, and we explain why those don't provide any benefits to anyone either, and there are some studies supporting that that we cite in the complaint. So I don't think you can just sprinkle a little bit of fairy dust in your product and say you have to look at all the ingredients and you have to prove that none of them work when it's sold as a glucosamine chondroitin product. The defendants refer to a number of decisions that have dismissed similar complaints. There were probably more decisions that uphold the identical complaints that we have here, which we've cited on our briefs. Importantly, a number of the major manufacturers of glucosamine chondroitin supplements have settled complaints identical to this. They've recognized there is a problem, and Rexall and Walmart and a number of other SHIF, a number of other major manufacturers and distributors have already entered into settlements to resolve these claims. I note the irony that defendants are challenging the studies that we've identified. They still have not disclosed anything about their own purported study. This is not a trial. No, it's not. It's a question of what you're able to allege. Let me ask you, if one of your plaintiffs had purchased this product and found that it worked but then heard on television that the experts believe it doesn't work, could that plaintiff bring a suit? Absolutely, because there's the placebo effect. You can't falsely advertise something and because there is a placebo effect. Well, there's no false allegation in my hypothetical. Well, if you say something can cure cancer. No, no. We're talking about a hypothetical where we have a product that says it does something and the plaintiff buys it and believes he gets relief from the product. He's not dissatisfied based on his own experience. But then he hears some experts, the vast majority of experts, say it's not working. He hears another story where other experts say it does work. Can he bring suit based on the vast majority of experts that he heard in that hypothetical? In your hypothetical, he probably can. He can? He can, because if you, again, look, if you can establish the trier of facts satisfaction. How can he say it was false when, number one, he alleges, I experienced that it was not false, and number two, there were experts going both ways on it? Well, let's talk about the placebo effect. It's a recognized scientific fact that some people believe that they're getting relief when they're not because they're taking the medicine and they think it works or whatever the product is. The FTC says you can't rely on placebo effect impact to legitimize your advertising, and a number of courts that we cited, I believe, say the same thing. So the way you say that the complaint I hypothesized works, only if the person's experience was based on a placebo effect. Correct. And have you alleged that in the complaint, that these people have experienced a placebo effect? No, we don't go that way because we don't need to in our particular fact situation. I would like to just emphasize that some of the claims on some of the products is that they rejuvenate or regrow cartilage. There's no scientific evidence that they could possibly do that by anyone. So there are definitely some false, we say they're all false, but there are specific representations where I don't think there's any argument that they're false. Just such as that one. And if your honors don't have anything else. Thank you, Mr. Berg. Thank you. We'll come down and greet counsel and accept Judge Hamilton's greetings remotely and then proceed on to the next case.
judges: Paul V. Niemeyer, Henry F. Floyd, Clyde H. Hamilton